IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Harold Smith, #83499-07, ) | |
| ) | Civil Action No. 6:06-0130-HFF-WMC |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER AND** |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| Alberto Gonzales, Attorney General for ) | |
| the United States; Harley G. Lappin, ) | |
| Director of the Federal Bureau of ) | |
| Prisons; Ray Holt,[1] Southeast Regional ) | |
| Director; and John J. LaManna, ) | |
| Warden, FCI Edgefield, ) | |
| ) | |
| Respondents. ) | |
| ) | |

The petitioner, a federal prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The record reveals that the petitioner is currently incarcerated at the United States Penitentiary (USP) in Hazelton, West, Virginia, serving a 4,477-day term for parole violation. The petitioner was originally sentenced on October 30, 1985, in the United States District Court for the District of South Carolina to a term of 23 years for the offense of armed bank robbery (18 U.S.C. §2113(d) (2). He has a projected satisfaction date of October 13, 2008, via Mandatory Release.

---

[1] Incorrectly identified in the complaint as "Richard" Holt.

The petitioner was incarcerated at the Federal Correctional Institution (FCI), Edgefield South Carolina, from April 3, 2003, through January 11, 2006. On April 1, 2004, the petitioner Smith was placed in the Special Housing Unit (SHU) for possible involvement in passing flyers to the inmate population at FCI Edgefield encouraging a group demonstration. On July 21, 2004, the Discipline Hearing Officer (DHO) found the petitioner had committed the prohibited act of "Encouraging a Group Demonstration." The DHO imposed sanctions of 30 days disciplinary segregation, six months loss of phone privileges, one year loss of visitation privileges, and impoundment of property while in disciplinary segregation. On September 5, 2004, the petitioner completed the 30-day disciplinary segregation sentence. For security reasons surrounding the seriousness of the prohibited act, the petitioner was placed in administrative detention pending a transfer to another facility since he was not allowed to return to general population at FCI Edgefield. The petitioner was transferred to USP Hazelton on January 11, 2006, and is currently incarcerated in the general population at that facility.

## **MOTION TO AMEND**

On April 14, 2006, after the respondents filed a motion to dismiss, the petitioner moved to amend his petition to add a number of parties and to seek as additional relief "immediate release from custody." The respondents filed their opposition to the motion on May 2, 2006. The respondents argue that since they have already filed a dispositive motion, allowing the amendment would be prejudicial to them. Further, as the only proper respondent to a habeas petition is the custodian of the petitioner, the addition of the proposed respondents would be futile. *See Rumsfeld v. Padilla*, 524 U.S. 426, 430 (2004). The petitioner has not stated why he wants to add these respondents, and he has not included the proposed amended petition, so the court can not assess whether new

2

causes of action are being raised. Based upon the foregoing, the petitioner's motion to amend is denied.

## **MOTION FOR SUMMARY JUDGMENT**

The respondents filed a motion to dismiss or, in the alternative, for summary judgment on March 15, 2006. By order filed on April 11, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed a response to the respondents' motion on April 21, 2006. The respondents filed a reply brief on April 28, 2006, and the petitioner filed a sur-reply on May 8, 2006.

### *Applicable Law*

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)(citations omitted). If, as here, on a motion pursuant to Rule 12(b)(6), matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

> Rule 56 states as to a party who has moved for summary judgment:
>
> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

3

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

4

*Analysis*

In his petition, the petitioner alleges that while engaged in the protected conduct of litigating issues regarding his criminal conviction, he was placed in administrative detention for purportedly "encouraging a group demonstration (attempting)" (pet. 4). The petitioner further alleges that on September 5, 2004, after he completed his 30 days disciplinary segregation time, he remained in administrative detention pending a transfer to another facility (pet. 5). He contends that sometime around December 2004 he was verbally informed that he had been assigned to the PILOT program, which required 18 months of clear conduct while in administrative detention before he could be transferred to another facility (pet. 5). The petitioner contends that such continual placement in administrative detention constitutes a violation of his constitutional rights under the First, Fifth, Sixth, Eighth and Fourteenth Amendments (pet. 7). He seeks a "preliminary and permanent injunction ordering Respondents, . . to immediately release petitioner back into general population or transfer him to another Federal Bureau of Prisons facility" (pet. 9).

The traditional function of a writ of habeas corpus was to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). This remedy has evolved to a point where it has been used to "effect discharge from any confinement contrary to the Constitution or fundamental law, even though imposed pursuant to conviction by a court of competent jurisdiction." *Id.* at 485; *see also* 28 U.S.C. §2241(c)(3). A civil rights action is the proper mechanism for a prisoner to challenge the conditions of his confinement, but it cannot be used to challenge the fact or duration of his confinement. Habeas corpus is the sole remedy for a prisoner challenging the very fact or duration of his imprisonment and seeking immediate or more speedy release. *Preiser*, 411 U.S. at 499; *see also Heck v. Humphrey*, 512 U.S. 477, 481-82 (1994) (affirming the Court's simple holding in *Preiser* that the only mechanism for a prisoner to challenge the fact or duration of his confinement is a petition for writ of habeas corpus, and a civil rights action could not be used in such cases).

5

The Fourth Circuit Court of Appeals has addressed the proper application of both a petition for writ of habeas corpus and a civil rights action. In *Lee v. Winston*, 717 F.2d 888 (4th Cir. 1983), a state prisoner brought a §1983 civil rights action and a §2254 habeas action to preclude the state from surgically removing a bullet from his chest. The Fourth Circuit framed the question before it as "whether the claim should be cognizable solely under one or the other of 42 U.S.C. §1983 and the habeas statute, 28 U.S.C. §2254, or whether it might properly be cognizable under both." *Lee*, 717 F.2d at 891. Acknowledging the procedural and substantive dichotomy between the two remedies, the Fourth Circuit in *Lee* held:

> Because of their differing and, in critical respects, conflicting procedural and doctrinal regimes, we decline to treat Lee's claim as one potentially entitling him to relief under both theories. We view Lee's claim as being most directly one seeking to enjoin persons acting under color of state law from depriving a citizen of the United States of a right secured by the Constitution, a claim properly treated as one grounded exclusively in § 1983. We do not consider it properly cognizable in the alternative or in parallel under the habeas statute, 28 U.S.C. § 2254.

*Id.* at 892.

Recognizing there may in some cases be overlap between habeas corpus and a civil rights action, the Court supported its decision by underscoring the distinctions between the two remedies:

> [T]he main thrusts of the two [remedies] are obviously quite different. [Habeas corpus] is primarily a vehicle for attack by a confined person on the legality of his custody and the traditional remedial scope of the writ has been to secure absolute release - either immediate or conditional - from that custody.... Conversely, § 1983 cannot be used to seek release from illegal physical confinement....

*Id.*

Other circuits have discussed the function of the habeas remedy. The Tenth Circuit Court of Appeals explained that when prisoners want to challenge their convictions

6

or sentences – the fact or duration of their confinement – they must petition for a writ of habeas corpus. *Boyce v. Ashcroft*, 251 F.3d 911, 914 (10th Cir.)(emphasis supplied), *vacated on other grounds Boyce v. Ashcroft*, 268 F.3d 953 (10th Cir. 2001). On the other hand, "[p]risoners who raise challenges to other prison decisions – including transfers to administrative segregation exclusion from prison programs, or suspension of privileges, *e.g.* the conditions of their confinement, must proceed under Section 1983 or *Bivens*." *Id.*; *see also Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement.... A civil rights action, in contrast, is the proper method for challenging conditions of confinement.").

Therefore, to determine whether a claim is cognizable under habeas corpus or under a civil rights action, a court must review whether the challenge is to the fact or duration of the prisoner's confinement, or to the conditions of the prisoner's confinement. *Todd v. Baskerville*, 712 F.2d 70, 73 (4th Cir. 1983). Here, the petitioner's complaint boils down to alleged constitutional violations stemming from his placement in administrative detention and a request to be released from administrative detention or transferred to another facility (pet. 9). These claims fit within the type the Fourth Circuit Court of Appeals in *Lee* referred to as claims seeking to enjoin persons acting under color of law from "depriving a citizen of the United States of a right secured by the Constitution" – claims that the court in *Lee* found were properly addressed through a civil rights action. Of course, the label petitioner gives to his claim is not conclusive upon the court. *Lee*, 717 F.2d at 893 n. 4. Thus, the petitioner cannot convert his complaints about the conditions of his confinement into a habeas corpus simply by bringing his complaint under the habeas corpus statute. Because the petitioner's complaints do not address the fact or the duration of his confinement, they should not be brought in a petition for writ of habeas corpus.

Title 28, C.F.R., §541.22(a)(6), authorizes the Warden or his designee to place an inmate in administrative detention when the inmate "[i]s terminating confinement in disciplinary segregation and placement in general population is not prudent." An inmate placed in administrative detention is to receive the same general privileges given to inmates in the general population, if such privileges are consistent with the available resources and the security of the unit. 28 C.F.R. §541.22(d). Policy also allows an inmate to remain in administrative detention for an extended period of time and to remain at a facility for 18 months with clear conduct before being considered for a transfer. *Id.; see also* def. m. to dismiss, ex. 4, Program Statement 5270.07, Inmate Discipline and Special Housing Units, pgs. 6 & 7, and ex. 5, Program Statement 5100.07, Security Designation and Custody Classification Manual, Chpt. 10, pg. 3.

In the case at hand, staff determined that it was not prudent for the petitioner to return to general population for security reasons because he had been found to have committed the prohibited act of encouraging a group demonstration (*see* def. m. to dismiss, ex. 3, McLafferty decl.). Therefore, after finished serving his 30-day disciplinary segregation time, the petitioner was placed in administrative detention pending his transfer to another facility. On January 11, 2006, the petitioner was transferred from FCI Edgefield and is currently incarcerated in the general population at USP Hazelton (def. m. to dismiss, ex.1). His extended placement in administrative detention does not exceed the bounds of his sentence, neither does it impose an "atypical and significant hardship" on him in relation to the "ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). Instead, administrative detention is similar, if not less restrictive, than the disciplinary segregation which the Supreme Court, in *Sandin*, found to be an "ordinary incident" of prison life. In other words, the petitioner's challenge in this case is not to the fact or duration of his confinement, but to a condition incident to serving a sentence in a federal prison. As such, this case should not be brought under the habeas corpus statute.

Moreover, none of the petitioner's claims, if valid, would serve to secure an instant or more speedy release from prison, which is the traditional function of the writ of habeas corpus. In his petition, the petitioner seeks release from administrative segregation or a transfer to another Bureau of Prisons facility. As noted above, the petitioner was transferred to USP Hazelton on January 11, 2006, and is currently incarcerated in the general population at that facility. Accordingly, he has already obtained the relief he seeks, and the petition is moot. Further, even if his petition was amended to seek immediate release from custody, as the petitioner requested after the motion to dismiss was filed, the amendment would be futile. The petitioner is a convicted and sentenced inmate. Even if, for the sake of argument, his claims were found valid, neither the fact nor the duration of his confinement would be affected by the outcome of this suit. *Lee*, 717 F.2d at 893. Based upon the foregoing, the petitioner's claims are not cognizable under habeas corpus but may be pursued pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 399 (1971).

## **CONCLUSION**

Wherefore, based upon the foregoing,

IT IS ORDERED that the petitioner's motion to amend is denied, and

IT IS RECOMMENDED that the respondents' alternative motion for summary judgment be granted.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

July 24, 2006

Greenville, South Carolina